UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
DELCO L. CORNETT,

                             MEMORANDUM AND ORDER

                Plaintiff,

    -against-
                            Civil Action No.
RICHARD A. BROWN, BERNARD B. KERIK,   04-CV-0754 (DGT)(LB)
CHRISTOPHER JAMISON, PAUL VORBECK,
IRMA SANTIAGO, LEE LINDEN, ROBERT
ERDMAN, WAYNE KAIFLER, JOHN MILLER,
JOHN WHITE, JOHN FRYER, JANE WARREN,
JOHN DONOHUE, JOHN LOWE, JOHN DOE,
and THE CITY OF NEW YORK,

                Defendants.

--------------------------------------X

TRAGER, J.:

    Both parties move for reconsideration of the March 30, 2006
Memorandum and Order granting in part and denying in part
defendants' motion for summary judgment. <u>Cornett v. Brown</u>, No.
04-cv-0754, 2006 WL 845568, at *17 (E.D.N.Y. March 30, 2006) (the
"March 30 Order").  Plaintiff moves to restore his claims against
Officers Erdman, Miller and the City of New York ("the City") for
illegal eviction, and the claims against Lieutenant White and
Officer Santiago for malicious prosecution.  Defendants move for
reconsideration of the denial of summary judgment as to
Lieutenant White and Officer Linden, and provide additional
affidavits to support their motion.

## Background

The facts of this case, which were addressed in detail in the March 30 Order, will only be revisited to the extent necessary to decide the two pending motions. The facts described are undisputed unless otherwise stated. Plaintiff was engaged in a dispute with a third party, Richard Simon ("Simon"), also known as Richard Anglin, over an apartment the two of them shared in Queens. Cornett, 2006 WL 845568, at *1-2. While neither plaintiff nor Simon owned the apartment, plaintiff had previously occupied the premises with consent of the owner. Id. Plaintiff then allowed Simon and Simon's godson to move into the apartment. Id. Plaintiff and Simon eventually learned that they would have to leave the apartment because the owner had relinquished ownership of the apartment. Id. at *2.

### (1)

### March 1-2, 2001

On the evening of March 1, 2001, after plaintiff demanded that Simon vacate the apartment, an argument ensued and Simon summoned the police, complaining that plaintiff was trespassing. Id. at *2-3. Officers Miller and Erdman arrived at the scene, where both plaintiff and Simon claimed to have rights to the apartment. Id. at *3. The officers determined that Simon had

the stronger claim[1] and instructed plaintiff to vacate the premises and resolve the issue in landlord-tenant court. Id.

Based in part on these events, plaintiff brought the present action against Officers Miller and Erdman for false arrest and deprivation of property. In the March 30 Order, the court granted Officers Miller's and Erdman's motion for summary judgment on those claims. The false arrest claim was dismissed because it was determined that plaintiff was never arrested during this incident. Id. at *6. The deprivation of property claim was dismissed because plaintiff failed to demonstrate the unavailability of post-deprivation remedies. Id. at *16.

### (2)
### June 26, 2001

On March 23, 2001, Simon filed a criminal complaint (the "March 23 Complaint") against plaintiff with the New York City Police Department in regard to the March 1, 2001 incident, alleging that plaintiff had trespassed in Simon's apartment. Id. at *4. The complaint report was typewritten on a form and indicates that the complainant, who called himself "Richard Anglin," had walked in to the police station to file the complaint. The complaint report was unsigned – and in fact, does

---

[1] While neither plaintiff nor Simon were able to produce a written lease, Simon was able to produce a cable bill in his godson's name. Cornett, 2006 WL 845568, at *3.

not contain a signature line or other space for a complainant to sign – and there was no indication that the police took any independent action on it. Id. at *8. On June 26, 2001, plaintiff was summoned to housing court in Queens to testify against Simon in an action that was being brought by the co-op board of the apartment complex. When plaintiff arrived at the courthouse, Lieutenant White, who was stationed at the 115th Precinct, received a telephone call from Simon. Aff. of Christopher White ("White Aff."), at ¶ 2. Lieutenant White stated in his affidavit that Simon indicated to him that plaintiff, "who was wanted on a criminal trespass complaint," was present at the Queens courthouse. Id. Lieutenant White then instructed Officer Linden to apprehend plaintiff "on the open criminal trespass case and return him to the precinct for processing." Id.; Aff. of Lee Linden ("Linden Aff."), at ¶ 3. Plaintiff was subsequently arrested by Officer Linden at the courthouse and taken to the 115th Precinct, where his arrest was processed by Officer Santiago. Cornett, 2006 WL 845568, at *4. Plaintiff was charged with Second Degree Criminal Trespass based on the complaint filed by Simon in connection with the March 1 incident; the case was eventually dismissed on procedural grounds.[2] Id.

---

[2] The case was dismissed for failure to comply with a Speedy Trial Requirement. See N.Y. Crim. Proc. Law § 30.30 (McKinney Supp. 2004).

There is a factual dispute over the events that occurred once plaintiff was taken to the 115th Precinct. Plaintiff claims that Lieutenant White admitted to him that Officer Linden had no basis for the arrest; that Lieutenant White "yelled" at Officer Linden that the arrest should be voided; and that Lieutenant White stated, nonetheless, that, "because the New York City Housing Law was so complicated, he would authorize the processing anyway." Cornett, 2006 WL 845568, at *9. Lieutenant White categorically denies these allegations and states in his affidavit that he made no such statements to either plaintiff or any other officers in the precinct once plaintiff arrived. White Aff. at ¶ 6-7. Lieutenant White further states that his only contact with the other defendants was when he instructed Officer Linden to apprehend plaintiff and later place him in a holding cell, and when he instructed officer Santiago to process the arrest. Id. at ¶ 4-5.

Plaintiff also alleges that while he was in custody, Officer Linden stated that it was necessary to seize plaintiff in order to prevent him from giving testimony at the housing court proceeding and that the plaintiff's arrest was in retaliation for a complaint plaintiff had earlier filed against Officers Erdman and Miller. Cornett, 2006 WL 845568, at *9. Officer Linden categorically denies these allegations and states in his affidavit that after placing plaintiff in a holding cell, he no

longer had any contact with plaintiff or Lieutenant White.
Linden Aff. at ¶ 9. Officer Linden further states that he made
none of the statements alleged by plaintiff, nor was he aware of
the pending complaint against Officers Erdman or Miller or of
plaintiff's role in the housing court action. Id. at ¶ 12-13.

Plaintiff's present complaint against Officers Linden and
Santiago and Lieutenant White for false arrest, against Officer
Santiago for malicious prosecution, against Officer Linden and
Lieutenant White for abuse of process, and against Officer Linden
for assault and battery stems from the events of June 26, 2001.
In the March 30 Order, the court granted Officer Santiago's
motion for summary judgment on the ground that she properly
relied on information of a commanding officer and, therefore, had
probable cause to process plaintiff. Cornett, 2006 WL 845568, at
*9, 14. The court also granted Officer Linden's and Lieutenant
White's motions for summary judgment on the abuse of process
claim on the grounds that (1) under New York law, retaliation is
merely an "improper motive" that is insufficient to give rise to
an abuse of process claim,[3] see Savino v. City of New York, 331

_____

[3] An abuse of process claim is properly predicated on an
"improper purpose," which is present when legal process is used
to achieve a collateral purpose unrelated to the outcome of the
lawsuit. Savino v. City of New York, 331 F.3d 63, 77 (2d Cir.
2003) ("[T]o state a claim for abuse of criminal process, it is
not sufficient for a plaintiff to allege that the defendants were
seeking to retaliate against him by pursuing his arrest and
prosecution. Instead, he must claim that they aimed to achieve a
collateral purpose beyond or in addition to his criminal

6

F.3d 63, 77 (2d Cir. 2003) ("[T]he New York Court of Appeals has made clear that '[a] malicious motive alone . . . does not give rise to a cause of action for abuse of process.'") (quoting Curiano v. Suozzi, 63 N.Y.2d 113, 117, 469 N.E.2d 1324, 480 N.Y.S.2d 466, 468-69 (1984)); and (2) plaintiff submitted no evidence that defendant Linden intended to prevent him from testifying in the housing-court proceeding, Cornett, 2006 WL 845568 at *15.  The court denied defendants' motion for summary judgment as to plaintiff's false arrest claims against Officer Linden and Lieutenant White stemming from the June 26 arrest and his assault and battery claim against Officer Linden from that same arrest. Officer Linden and Lieutenant White now request reconsideration of the denial of their motion for summary judgment on the false arrest and assault and battery claims.

## Discussion

### (1)

### Standard of Review

A motion denominated as a motion for reconsideration, provided that it challenges the prior judgment on the merits, will be treated as either a motion "to alter or amend" judgment under Rule 59(e) or a motion for "relief from judgment" under

prosecution.").

Rule 60(b). The timing of the motion after the entry of judgment or order determines which rule governs. See Rohlehr v. Brookdale Univ. Hosp. and Med. Ctr., No. 03-CV-3576, 2007 WL 210427, at *2-3 (E.D.N.Y. Jan. 26, 2007). Specifically, if the motion is served within ten days of entry of judgment, the motion falls under Rule 59(e); if it is served after that time, it falls under Rule 60(b). Id. Under Federal Rule 59(e), courts have an "opportunity to correct manifest errors of law or fact, hear newly discovered evidence, consider a change in the applicable law or prevent manifest injustice." U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A. -Petrobras, No. 98-CV-3099, 2005 WL 736149, at *1 (S.D.N.Y. Mar. 29, 2005) (citing Word v. Croce, No. 01 Civ. 9614, 2004 WL 434038, at *2 (S.D.N.Y. Mar. 9, 2004)).

A motion for reconsideration "is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court." Equal Employment Opportunity Comm'n v. Federal Express Corp., 268 F. Supp. 2d 192, 195 (E.D.N.Y. 2003). Such motions, "generally not favored," United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001), may not be used "solely to relitigate an issue already decided." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

Local Civil Rule 6.3 requires a party moving for reconsideration to set forth "the matters or controlling

decisions which . . . the court has overlooked." Local Civil
Rule 6.3. "The standard for granting such a motion is strict,
and reconsideration will generally be denied unless the moving
party can point to controlling decisions or [factual] data that
the court overlooked - matters, in other words, that might
reasonably be expected to alter the conclusion reached by the
court." Shrader, 70 F.3d at 257; see also Chang v. United
States, 250 F.3d 79, 86 n.2 (2d Cir. 2001). This high burden was
established in part "to dissuade repetitive arguments on issues
that have already been considered fully by the court." Caleb &
Co. v. E.I. DuPont De Nemours & Co., 624 F. Supp. 747, 748
(S.D.N.Y. 1985). In addition, the moving party may not "advance
new facts, issues or arguments not previously presented to the
Court." Morse/Diesel, Inc. v. Fid. & Deposit Co. of Maryland,
768 F. Supp. 115, 116 (S.D.N.Y. 1991).

Similarly, relief from a final judgment, order, or
proceeding under Rule 60(b) of the FRCP is "extraordinary
judicial relief" and may be granted "only upon a showing of
exceptional circumstances." Nemaizer v. Baker, 793 F.2d 58, 61
(2d Cir. 1986); see also Int'l Bhd. of Teamsters, 247 F.3d at
391; Paddington Partners v. Bouchard, 34 F.3d 1132, 1144 (2d Cir.
1994). Under Rule 60(b), relief may be granted based on: (1)
mistake, inadvertence, surprise, or excusable neglect; (2) newly
discovered evidence; (3) fraud, misrepresentation, or misconduct

9

of an adverse party; (4) the judgment being void; (5) the judgment being satisfied, released, or discharged; or (6) any other reason justifying relief. Fed. R. Civ. P. 60(b); <u>see also</u> <u>Nemaizer</u>, 793 F.2d at 61. The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court. <u>See</u> <u>Devlin v. Transp. Commc'ns Int'l Union</u>, 175 F.3d 121, 132 (2d Cir. 1999).

**(2)**

**Plaintiff's motion for reconsideration
of the March 30 Order**

Plaintiff moves that his claims against Lieutenant White, Officers Miller, Erdman, and Santiago, and the City[4] in the March 30 Order be "restored." Notice of Cross Mot. at 1. Plaintiff's motion for restoration of his claims is dated June 22, 2006. Because the order granting Lieutenant White and Officers Miller, Erdman, and Santiago summary judgment was rendered more than 10 days earlier, plaintiff's motion must be considered a motion for relief from judgment under Rule 60(b). <u>See</u> Fed. R. Civ. P. 60(b).

"The Second Circuit has instructed that Rule 60(b) is

---

[4] As discussed above, the claims against the City for, <u>inter alia</u>, false arrest, malicious prosecution, assault and battery, and deprivation of First and Fourteenth Amendment rights, have been dismissed under principles of <u>res judicata</u> due to their dismissal from an earlier suit brought by plaintiff arising from the same nucleus of facts, under Docket No. 02-CV-2493.

'extraordinary judicial relief' and can be granted 'only upon a
showing of exceptional circumstances.'" <u>Wilson v. Pessah</u>, No.
05-cv-3143, 2007 WL 812999, at *2 (E.D.N.Y. Mar. 14, 2007)
(quoting <u>Nemaizer</u>, 793 F.2d at 61). Plaintiff fails to indicate
upon which subsection of Rule 60(b) he relies. As discussed
above, Rule 60(b) prescribes six statutory grounds upon which
relief from judgment can be granted. In this case, none of those
six grounds has been satisfied to justify granting relief.
Notably, plaintiff does not offer any newly discovered evidence
that could not have been discovered in time to move for a new
trial under Rule 59(b). Instead, plaintiff merely re-alleges the
facts he cited in opposing defendants' first motion for summary
judgment. Finally, plaintiff has not advanced any other reason
justifying relief from the operation of judgment. <u>See</u> Fed. R.
Civ. P. 60(b)(6). Although subsection (b)(6) operates as a
"catch-all" provision authorizing the court to relieve a party
from a judgment for "any other reason justifying relief," its use
is limited to cases "where there are extraordinary circumstances,
or where the judgment may work an extreme and undue hardship" on
the moving party. <u>Marrero Pichardo v. Ashcroft</u>, 374 F.3d 46, 55-
56 (2d Cir. 2004). In this case, plaintiff has not alleged, nor
does the record support the existence of any "extraordinary
circumstances" justifying relief. Accordingly, plaintiff's
motion to restore his claims is denied.

## Defendants' motion for reconsideration

Officer Linden and Lieutenant White move for reconsideration of the March 30 Order, which denied their motion for summary judgment on plaintiff's false arrest and assault and battery claims, and their defense of qualified immunity arising from plaintiff's June 26, 2001 arrest.  On April 10, 2006, Officer Linden and Lieutenant White requested leave to file a motion for reconsideration of that denial.  Because that request was filed within ten days of the March 30 Order, the motion for reconsideration will be considered a motion to alter or amend judgment under Rule 59(e).  <u>See</u> Fed. R. Civ. P. 59(e).

### a.    Probable cause

Officer Linden and Lieutenant White move for reconsideration of the finding that a genuine issue of material fact as to whether they had probable cause for the June 26 arrest precluded summary judgment in their favor.  In the earlier motion for summary judgment, defendants did not submit any affidavits or other evidence showing what information was available to Linden and White when they authorized and effected the June 26 arrest.  Defendants now seek to remedy that deficiency by submitting affidavits.  The standards for assessing probable cause were

discussed at length in the March 30 Order and will not be
repeated here.

### i.   Lieutenant White

Lieutenant White has submitted an affidavit that supports
his argument that he had probable cause to authorize plaintiff's
arrest.  Plaintiff counters Lieutenant White's claim of probable
cause by alleging that Lieutenant White made the following
statements while plaintiff was in custody at the precinct:  that
"he was surprised that defendant Linden . . . had placed
plaintiff under arrest;" that "plaintiff had been falsely
arrested;" that he would authorize plaintiff's processing anyway
because "the housing law in [New York City] is so complicated;"
and, finally, that Lieutenant White stated that he would not
allow plaintiff to testify in housing court.  Cornett, 2006 WL
845568, at *9-10.  As discussed above, Lieutenant White denies
that he made those statements to either plaintiff or Officer
Linden once plaintiff was returned to the precinct for
processing.  White Aff. at ¶¶ 5-7.

Plaintiff argues that Lieutenant White's alleged post-arrest
statements demonstrate that Lieutenant White was aware that he
had no probable cause to authorize plaintiff's arrest.  While
those alleged post-arrest statements may shed light on Lieutenant
White's post-arrest beliefs about the propriety of the arrest,

13

under New York law, the facts material to the probable cause analysis center on what information was available to Lieutenant White <u>at the time he authorized the arrest</u>. <u>See</u> <u>Wallace v. City of Albany</u>, 283 A.D.2d 872, 873, 725 N.Y.S.2d 728 (3d Dep't 2001) ("A warrantless arrest gives rise to a presumption that plaintiff's arrest and subsequent detention were unlawful, which requires defendant to establish legal justification as an affirmative defense based upon proof that, at the time of plaintiff's arrest, the police had probable cause to believe that plaintiff committed some crime." (internal citation omitted)).

Lieutenant White states in his affidavit that he received a telephone call from the complainant in a criminal trespass complaint alerting him to the alleged suspect's (plaintiff's) location. White Aff. at ¶ 3. Lieutenant White further states that he then instructed Officer Linden to apprehend plaintiff at the courthouse. <u>Id.</u> These facts alone are insufficient to create probable cause. Specifically, the information available to Lieutenant White at the time he authorized the arrest was not enough to make a reasonable officer believe that plaintiff had committed a crime.

Under New York law, there is no precedent for a finding of probable cause based on the level of information possessed by Lieutenant White (or at least, based on the information he has provided in his affidavit) at the time he authorized the arrest.

First, while victim complaints may alone form a basis of probable cause, absent unique circumstances, cases applying this principle involve crimes that had just been committed, or are being committed contemporaneously with the complaint. They also involve either signed written complaints or complaints made in person to the arresting officer, or both. <u>See</u> <u>Singer v. Fulton Co. Sheriff</u>, 63 F.3d 110, 119 (2d Cir. 1995) ("An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity."). In <u>Singer</u>, the court found that the police had probable cause to arrest the § 1983 plaintiff after the police received a signed complaint from the victim of a theft only hours after the alleged crime had been committed. <u>Singer</u>, 63 F.3d at 113, 119. <u>See</u> <u>also</u> <u>Miloslavsky v. AES Engineering Soc., Inc.</u>, 808 F. Supp. 351 (S.D.N.Y. 1992) (finding probable cause to arrest § 1983 plaintiff who was creating a public disturbance where witnesses immediately reported the plaintiff's behavior and where police also witnessed plaintiff's disruptive behavior). <u>Cf.</u> <u>Minott v. City of New York</u>, 203 A.D.2d 265, 609 N.Y.S.2d 334 (2d Dep't 1994) (finding probable cause to arrest § 1983 plaintiff notwithstanding the complainant's eight-month delay in reporting an alleged rape because there was a reasonable excuse

for the delay in reporting the crime).  In this case, Simon's unsigned[5] written complaint was submitted <u>three weeks</u> following plaintiff's alleged criminal "trespass," Simon has not offered an excuse to justify the delay, and Simon's telephone call to the precinct on the day of the arrest did not indicate that plaintiff had just committed a crime or was about to commit a crime.

Under <u>Singer</u>, victim complaints may alone form a basis of probable cause unless the officer has reason to believe that the complainant is not being truthful.  <u>See</u> <u>Singer</u>, 63 F.3d at 119; <u>Miloslavsky</u>, 808 F. Supp. at 355 ("[A] law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth.").[6]  Courts applying this limitation to the victim/citizen complaint rule have found that the complainant's delay in reporting a crime is a factor for determining the complainant's truthfulness.  <u>See</u> <u>Jovanovic v. City of New York</u>, 04-CV-8437, 2006 WL 2411541, at *7 (S.D.N.Y. Aug. 17, 2006) (finding no probable cause on a

_____

[5]  It is noteworthy that the complaint was unsigned.  Based on the record, it is unclear whether complaints of this type are typically signed.  However, the fact that the complaint in this case was unsigned strips it of an indication of reliability.

[6]  As noted in <u>Cornett</u>, 2006 WL 845568, at *10 n.11, the reliability of victim complaints is due, in part, to the fact that false complaints are punishable under state law.  <u>See</u> N.Y. Penal Law § 240.50 (McKinney 2000).  Here, any prosecution of Simon for filing a false complaint would have been complicated by the lack of his signature on the complaint report.

defendant-police officer's motion to dismiss a § 1983 complaint
because there were numerous reasons to doubt alleged rape/assault
victim's veracity, including a delay of four days in approaching
police or seeking medical attention); <u>Bullard v. City of New
York</u>, 240 F. Supp. 2d 292, 95-96, 98 (S.D.N.Y. 2003) (finding no
probable cause on a defendant-police officer's motion to dismiss
a § 1983 complaint because of a "myriad of indicia of
unreliability," including a six-week delay in reporting the
crime).  In this case, Simon waited three weeks before filing his
unsigned complaint.  Following the complaint, it took the police
three months to arrest plaintiff, despite the fact that Simon had
provided plaintiff's address in the complaint report.  That
three-month gap between the filing of the complaint and any
apparent police activity in the case allows an inference that the
complaining witness was not credible.  In the alternative, the
three-month gap allows an inference that the police did not
believe that plaintiff's alleged actions actually constituted an
crime, or that they constituted so minor a crime as to not
warrant any further police action.

     In light of the inferences that a reasonable police offer
might draw when receiving a call from the complainant three
months later, Lieutenant White's decision to authorize
plaintiff's immediate arrest upon receiving the call from Simon
is problematic.  For the three months between the time the

complaint was filed until the arrest, there is no evidence in the
record that the police investigated the events underlying the
complaint that were alleged to constitute a crime.[7]  Nor is there
any evidence that the police questioned either Simon or plaintiff
to determine if plaintiff had in fact committed a crime, whether
Lieutenant White questioned the detective who had been assigned
to the case when the complaint was filed, or whether Lieutenant
White took any steps to determine whether a warrant for
plaintiff's arrest should be sought.  Instead, the complaint sat
dormant for more than three months until a telephone call was
received alerting the police to plaintiff's location.  At that
point, based on the record, Officer White immediately and without
any further investigation ordered plaintiff's arrest.  While the
record does not suggest any alternatives, Lieutenant White
presumably had numerous other options short of the plaintiff's
arrest and processing, including questioning plaintiff or asking
him to return to the precinct without an arrest.

Therefore, in light of the fact that Simon did not allege
that a crime was taking place or had just taken place when he
called Lieutenant White, Simon's delay in filing the complaint
and the absence of any affirmative steps by the police to

---

[7] The record is absent of any explanation of how the police
typically use complaint reports in assessing whether a crime has
been committed and the circumstances under which further
investigation may be required before a warrant is sought or an
arrest is effectuated on the basis of such a complaint.

investigate the facts underlying the complaint, on the record as it now stands, a jury could properly conclude that Lieutenant White did not have probable cause to authorize plaintiff's arrest on the basis of the complaint alone.

### ii. Officer Linden

Officer Linden has submitted an affidavit in support of his argument that he had probable cause for plaintiff's arrest. In that affidavit, Officer Linden states that he was instructed by his commanding officer, Lieutenant White, to apprehend plaintiff at the courthouse because plaintiff was "wanted" on an "open criminal trespass complaint." Linden Aff. at ¶ 3. Officer Linden also states that he was informed by Lieutenant White that the complainant in the open criminal trespass case had alerted the police that plaintiff was at the courthouse. Id. at ¶ 4. Officer Linden further states that when he arrived at the courthouse, he was met by the complainant (presumably Simon), who "pointed out" plaintiff and informed Officer Linden that "he [plaintiff] was the individual wanted on the open trespass case." Id. at ¶ 6. Finally, Officer Linden states that the man the complainant pointed out matched the description of plaintiff that had been previously provided to Officer Linden by Lieutenant White. Id. at ¶¶ 5, 7.

Given that undisputed affidavit testimony, it cannot be said

that Officer Linden had probable cause to arrest plaintiff.
At the time of the arrest, Officer Linden had no basis with which
to form an independent belief as to whether plaintiff had
committed a crime.  His decision to arrest plaintiff was based
solely on the instruction of Lieutenant White.  Under the "fellow
office rule," police officers who act solely on the basis of an
instruction from a commanding officer are insulated from false
arrest liability only when the commanding officer himself had
probable cause to authorize the arrest.  See People v. Ramirez-
Portoreal, 88 N.Y.2d 99, 113, 666 N.E.2d 207, 215, 643 N.Y.S.2d
502, 510 (1996) ("[E]ven if an arresting officer lacks personal
knowledge sufficient to establish probable cause, the arrest will
be lawful if the officer 'acts upon the direction of or as a
result of communication with a superior or fellow officer or
another police department provided that the police as a whole
were in possession of information sufficient to constitute
probable cause to make an arrest.'" (quoting People v. Horowitz,
21 N.Y.2d 55, 60, 233 N.E.2d 453, 286 N.Y.S.2d 473 (1967))).
Therefore, as discussed above, on the record before us, a jury
could properly conclude that Lieutenant White did not have
probable cause to authorize plaintiff's arrest.  Accordingly,
Officer Linden did not have probable cause to effectuate that

arrest.[8]

**b.    Qualified immunity**

Defendants raise the defense of qualified immunity with
respect to plaintiff's false arrest claims.  Under federal law,
the doctrine of qualified immunity shields from personal
liability for damages police officers who engage in official
conduct that "does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known, insofar as it was objectively reasonable for such
officials to believe, even if mistakenly, that their conduct did
not violate such rights."  Ricciuti v. N.Y.C. Transit Auth., 124
F.3d 123, 127 (2d Cir. 1997) (internal quotations and citations
omitted).  An arresting officer will be entitled to qualified
immunity from a suit for damages even in the absence of probable
cause if he can show that there was "arguable probable cause" for
the arrest.  Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004).
"Arguable probable cause exists 'if either (a) it was objectively
reasonable for the officer to believe that probable cause
existed, or (b) officers of reasonable competence could disagree
on whether the probable cause test was met.'"  Id. (quoting
Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991));

_____

[8] For this reason, the alleged post-arrest statements made
by Officer Linden to plaintiff are irrelevant in determining the
issue of probable cause.

see also Doyle v. Rondout Valley Cen. School Dist., 3 A.D.3d 669, 671, 770 N.Y.S.2d 480, 482 (3rd Dep't 2004).  As with the probable cause inquiry, what is relevant is the officer's knowledge at the time of the arrest.  Escalera, 361 F.3d at 747-48.

### i. Lieutenant White

With respect to Lieutenant White, the question of qualified immunity turns on whether it was objectively reasonable for him to believe that probable cause existed at the time he authorized plaintiff's arrest, or if officers of reasonable competence could disagree on whether the probable cause test was met.  See Escalera, 361 F.3d at 743.  As discussed above, probable cause can exist when an officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."  Singer, 63 F.3d at 119.  Thus, if it was objectively reasonable for Lieutenant White to believe that plaintiff had committed a crime – or at least if such a conclusion would have been debatable among reasonable officers – at the time he authorized the arrest, there was "arguable probable cause" for the arrest and Lieutenant White is entitled to qualified immunity.

Lieutenant White is entitled to qualified immunity because,

even if a jury could properly conclude, on the record as it now stands, that there was no probable cause to arrest plaintiff, reasonable officers could, nevertheless, disagree over the weight that the complaint report and telephone call should be given despite the various "indicia of unreliability" present in this case – i.e., the reporting "gap" and the lack of investigatory activity.  For example, a reasonable police officer could have concluded that the delay in arresting plaintiff or Simon's delay in reporting the alleged crime was because it was not considered a serious offense – and not an "indication of unreliability."  It should be noted that Lieutenant White's alleged post-arrest statements do not enter the qualified immunity analysis, because they speak only to his subjective assessment of whether probable cause existed, not to what an objectively reasonable officer would have done based on the available information.  Therefore, because officers of reasonable competence could disagree on whether the probable cause test was met, Lieutenant White had "arguable probable cause" to arrest plaintiff and he is entitled to qualified immunity.

### ii. Officer Linden

With respect to Officer Linden, the question of qualified immunity turns on whether it was objectively reasonable for him to believe that plaintiff had committed a crime – or at least if

such a conclusion would have been debatable among reasonable officers – at the time he effectuated the arrest. Escalera, 361 F.3d at 743. It is clear Officer Linden can not "inherit" a proper basis of probable cause via the fellow officer rule from Lieutenant White because Lieutenant White did not possess probable cause himself to authorize the arrest. However, that bar does not prevent Officer Linden from forming an independent belief that his commanding officer did have specific knowledge that plaintiff had committed a crime.[9] That belief, in conjunction with Officer Linden's knowledge that a complaint report had been filed against plaintiff and that the complainant had alerted police to plaintiff's location, is sufficient to allow an objectively reasonable police officer to conclude that plaintiff had committed a crime. Therefore, Officer Linden had "arguable probable cause" to arrest plaintiff and is entitled to qualified immunity.

c.   **Assault and battery**

The March 30 Order denied summary judgment for Officer Linden on plaintiff's assault and battery claim stemming from the June 26 arrest, because it was impossible to determine from the record at that time whether the June 26 arrest was privileged by

_____

[9] There is no evidence in the record that Officer Linden had any reason to doubt the information on which Lieutenant White's orders were premised.

probable cause.  On the current record, it has been established that officers did not have probable cause for the June 26 arrest. Nonetheless, plaintiff's federal false arrest claim under § 1983 against Officer Linden is being dismissed on qualified immunity grounds.

While a finding of qualified immunity on plaintiff's federal false arrest claim does not preclude the assault and battery claim per se, the ultimate effect is dismissal of the latter state law claim.  It is well established that while federal qualified immunity protects an official from liability under _federal_ causes of action, it does not protect officials from claims based solely on state law.  Jenkins v. City of New York, 478 F.3d 76, 86 (2d Cir. 2007).  New York state law, however, also recognizes qualified immunity as an affirmative defense under similar circumstances.  _Id_. at 88 (holding that "under both New York and federal law, summary judgment in dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable").  Therefore, the Second Circuit in _Jenkins_ reached the conclusion that if the police officer-defendants were entitled to qualified immunity under federal law, summary judgment would be similarly appropriate on the plaintiff's state law false arrest claim.  _Id._ at 87.  Thus, Officer Linden is also entitled to qualified

immunity for the June 26 arrest under New York law.

Plaintiff's assault and battery claim derives entirely from his false arrest claim.  See <u>Sulkowska v. City of New York</u>, 129 F. Supp. 2d 274, 294 (S.D.N.Y. 2001).  Therefore, because the arrest was lawful under New York state law, and plaintiff has not alleged that Officer Linden used any unreasonable force in effectuating the arrest, plaintiff's assault and battery claim is dismissed.

## Conclusion

Plaintiff's motion for reconsideration is denied. Defendants' motion for reconsideration is granted.  For the reasons stated above, summary judgment is denied as to plaintiff's (1) false arrest claims against Lieutenant White and Officer Linden for the June 26 arrest; and (2) assault and battery claim against Officer Linden for the June 26 arrest. Defendants' motion for summary judgment on the basis of qualified immunity is granted as to Officer Linden and Lieutenant White. The Clerk of the Court is directed to close the case.

Dated:     Brooklyn, New York
           September 17, 2007

                              SO ORDERED:


                              _____/s/_____
                              David G. Trager
                              United States District Judge